UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

PAUL PITSNOGLE,

    Plaintiff,

v.

CITY OF SPARKS,

    Defendant.

Case No. 3:08-CV-0563-KJD-RAM

**ORDER**

Currently before the Court is Defendant City of Sparks ("Sparks") Motion to Dismiss (#35). Plaintiff filed a Response in Opposition (#46), to which Defendant filed a Reply (#47). Additionally pending before the Court is Plaintiff's Motion for Entry of Final Judgment (#36) to which Defendant Washoe County filed a Response in Opposition (#40). Additionally before the Court is Defendant Sparks' Motion for Leave to File Supplemental Reply (#48), to which no response was filed. The Court has considered each of the Motions, with their respective Responses and Replies and issues its ruling on each together herein.

**I. Background**

This case arises from an underlying criminal investigation and trial involving Plaintiff Paul Pitsnogle ("Pitsnogle"). Pitsnogle was employed as a police officer by the City of Reno on August 11, 1995. At approximately 1:00 a.m. on April 3, 2006, Pitsnogle, then a sergeant, was on duty, and stopped a car at the McCarran Blvd. on-ramp to I-85 in Reno, Nevada, that was allegedly driving 35 miles per hour in a 55 mile per hour zone. The driver of the car was Elizabeth Eoff ("Eoff"), and her passenger was Chelsea Norton. Upon inquiring if Eoff was out past curfew, Eoff produced a school identification indicating that she was under the age of 18. Pitsnogle alleges that he detected the odor of alcohol emitting from the car and asked Eoff to step out of the car in order to confirm that the odor was being emitted by Eoff, and if so, to require Eoff to undergo a field sobriety test.

Pitsnogle administered a horizontal gaze nystagmus and one-legged stand test. Eoff failed the one-legged stand test. Upon detecting alcohol on Eoff's breath, Pitsnogle administered a preliminary breath test with a PBT digital instrument used for the express purpose of testing potentially intoxicated drivers. The PTB machine registered that Eoff had a .001 blood alcohol level. Pitsnogle allegedly believed that the PTB machine had given a faulty reading due to the cold weather, and placed the machine on the front seat of his car, near the heater, in order to warm it up.

Pitsnogle alleges that due to the cold and rainy weather, he instructed Eoff to put on a jacket, and hooded sweatshirt. According to Pitsnogle, Eoff, believing that she was going to be cited for driving while intoxicated, attempted to bribe Pitsnogle with Del Taco food. When Pitsnogle refused, Eoff offered him "Reno known benefits", a "blow job" and a "threesome" with her passenger, allegedly telling Pitsnogle that she would keep it a secret. Pitsnogle claims that he refused Eoff's proposals and firmly directed her to stop attempting to offer bribes of any kind.

Due to rain and cold, Pitsnogle asked Eoff to sit in the back seat of his police cruiser. While Pitsnogle was sitting in the front seat of the police cruiser writing his notes about Eoff's performance on the field sobriety test, he alleges that Eoff began disrobing without warning or prior explanation. Pitsnogle avers that he immediately jumped out of the car upon seeing Eoff disrobing and ordered her to get her clothes on and get out of the vehicle. Outside of the car, Pitsnogle then re-administered the PTB test, which resulted in a .007 blood alcohol level. Believing he did not have enough evidence to arrest Eoff for driving while intoxicated, he attributed her behavior to immaturity, and allowed her to return to her car and drive away.

The next morning, Eoff came to the Reno police station with her parents and reported that a Reno police officer had committed a sex offense against her. Reno Police Department ("RPD") employees Jones and Shephard conducted preliminary interviews of Eoff and her mother. Eoff was then formally interviewed by RPD employee Armitage. Later that morning, RPD employees Chalmers and Fogarty informed Pitsnogle that Eoff had made allegations against him, and proceeded

1  to interview him. Eoff filed a complaint against Pitsnogle for misconduct by a public officer and
2  open lewdness.
3        The investigation of the incident was turned over to the Sparks Police Department because
4  Pitsnogle was an employee of the RPD, and the RPD could not investigate one of its own officers.
5  The Sparks Police Department, together with the Washoe County District Attorney's Office
6  conducted the investigation. On May 17, 2006, an indictment and bench warrant were filed against
7  Pitsnogle. See State v. Paul Pitsnogle, CR06-1184, Second Judicial District Court, Department 10.
8        Pitsnogle's criminal trial took place from October 16, 2006 through October 24, 2006, after
9  which he was acquitted. On February 15, 2008, Plaintiff brought a cross-claim in a separate action,
10 Elizabeth Eoff v. City of Reno, Paul Pitsnogle, Case No. 3:08-cv-0059-KJD-RAM against co-
11 defendant City of Reno asserting claims similar to the claims he brings in this action. On November
12 3, 2008, Pitsnogle signed a stipulation for dismissal of his cross-claim.
13       Plaintiff filed a Complaint in this Court on October 21, 2008 alleging eight claims for relief,
14 for: (1) violations of 42 U.S.C. § 1983 against the City of Reno; (2) violations of 42 U.S.C. § 1983
15 against the City of Sparks; (3) violations of 42 U.S.C. § 1983 against Washoe County; (4) Malicious
16 Prosecution against The City of Sparks and County of Washoe; in conspiracy with the City of Reno;
17 (5) Abuse of Process by the City of Reno; (6) Slander against all Defendants; (7) Attorney's Fees;
18 and (8) Conspiracy to violate civil rights, maliciously prosecute, slander, and abuse of process by all
19 Defendants under 42 U.S.C. § 1983.
20       Specifically, Pitsnogle alleges that Washoe County District Attorney's Office employees, and
21 members of the City of Reno and City of Spark Police Departments violated his constitutional rights
22 by engaging in a conspiracy to deprive him of his liberty pursuant to a specious indictment, which
23 was based on what Pitsnogle claims was an inadequate investigation, and resulted in a malicious
24 prosecution.
25       On September 30, 2009, the Court issued an Order (#27) granting the City of Reno and
26 Washoe County's Motions to Dismiss (## 9, and 16) respectively, and granting the City of Sparks'

Motion to Dismiss (#12) in part, as to Plaintiff's claim for abuse of process. (See #27.) The Order denied Plaintiff's Motions for Leave to Amend against the City of Reno and Washoe County (## 17, and 25), yet granted Plaintiff's Motion for Leave to Amend against the City of Sparks. Subsequently, Plaintiff filed an Amended Complaint (#33), and Errata to Amended Complaint (#35).[1]

Plaintiff's Amended Complaint ("Complaint") brings four claims for relief, alleging: (1) Violations of Constitutional rights arising under 42 U.S.C. §§ 1983 and 1988; (2) Malicious Prosecution; (3) Slander; and (4) Conspiracy to Violate Civil Rights, Maliciously Prosecute, Slander and Abuse Process under 42 U.S.C. § 1983.

Sparks' instant Motion seeks that the Court dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. Specifically, Sparks avers that Plaintiff's first and second claims alleging violations of 42 U.S.C. § 1983 and malicious prosecution fail because they are "nothing more than a 'formulaic recitation of the elements of a cause of action,'" because Plaintiff cannot show lack of probable cause, and because Plaintiff fails to allege a legitimate constitutional violation. (#35 at 6.) Additionally, Defendant avers that Plaintiff has failed to demonstrate municipal liability, and that his defamation claim is insufficiently pled.

**II. Legal Standard**

Pursuant to Fed. R. Civ. P. 12(b)(6), a court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to rise above the

---

[1] The Court refers to the Errata to the Amended Complaint (#34) as the First Amended Complaint ("FAC" or "Complaint").

4

speculative level." Twombly, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949 (internal citation omitted).

In Iqbal, the Supreme Court recently clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the Court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. Id. at 1950. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. Id. at 1949. Second, the Court must consider whether the factual allegations in the complaint allege a plausible claim for relief. Id. at 1950. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. Id. at 1949. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." Id. (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, plaintiff's complaint must be dismissed. Twombly, 550 U.S. at 570.

**III. Analysis**

    **A. Malicious Prosecution and 42 U.S.C. §§ 1983**

Plaintiff's Complaint alleges, *inter alia* that Sparks and its employee Detective Marlene Cleveland ("Cleveland"), engaged in acts giving rise to malicious prosecution, and seeks a remedy under 42 § U.S.C. 1983. To state a claim under Section 183, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988) (citations omitted).

To prevail on a Section 1983 claim for malicious prosecution, "a plaintiff must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right." Awabdy v. City

1 of Adelanto, 368 F.3d 1062, 1066 (9th Cir. 2004) (citing Freeman v. City of Santa Ana, 68 F.3d
2 1180, 1189 (9th Cir. 1995)).  Defendant avers that Plaintiff's claim for malicious prosecution fails
3 because Plaintiff cannot show that his prosecution lacked probable cause, and because the Complaint
4 fails to allege a specific constitutional violation.  The Court does not agree.

### 1. Probable Cause

6 Defendant cites both Nevada Supreme Court and Ninth Circuit authority to argue that an
7 indictment is sufficient to demonstrate the existence of probable cause.  In Awadby, the Ninth Circuit
8 stated that it looks "to the [relevant state] law to determine the legal effect of the state court's action
9 because [it has] incorporated the relevant elements of the common law tort of malicious prosecution
10 into its analysis under § 1983." 368 F.3d at 1066 (internal citation omitted).   In malicious
11 prosecution cases, the Nevada Supreme Court holds that an indictment of a defendant "constitutes
12 prima facie evidence that probable cause for criminal prosecution exist[s]" however, the court has
13 noted that "the prima facie evidence [can] be rebutted with a relevant showing of false testimony or
14 suppressed facts."  Jordan v. State ex rel Dept. of Motor Vehicles and Public Safety, 110 P.3d 30, 49
15 n.65 (Nev. 2005)(citing Awadby 368 F.3d at 1067).

16 Here, Plaintiff has alleged that the Defendant and others involved with the investigation
17 leading to his indictment and prosecution suppressed, or purposefully excluded exculpatory
18 evidence, failed to consider inconsistent testimony, and made misrepresentations regarding the time
19 wherein alleged facts took place, amongst other things.  Accordingly, Defendant's argument that
20 Plaintiff has not alleged probable cause is unpersuasive.  A liberal construal of the Complaint
21 suggests that Plaintiff may be able to demonstrate a lack of probable cause which led to the issuance
22 of his indictment.

### 2. Constitutional Violation

24 Defendant also avers that the Complaint fails to allege a specific Constitutional violation,
25 thus warranting dismissal of Plaintiff's Section 1983 claims.  A review of the alleged facts however,
26 demonstrates that although not a model of clarity, the Complaint does state a general claim under the

Fourteenth Amendment sufficient to survive dismissal. Specifically, the Complaint avers that "this case arises under 42 U.S.C. § 1983 because the Plaintiff was deprived of his right to due process by the City of Sparks and its employees." (#34 at 2.)

In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Under a liberal reading of the Complaint, the Court adduces that Plaintiff sufficiently alleges a Fourteenth Amendment violation of due process for the deprivation of his employment. The Court notes however, that aside from his allegation that the investigation leading up to his prosecution was tainted, it is undisputed that in the underlying matter, Plaintiff had a full criminal jury trial replete with all constitutional protections, including discovery, presenting witnesses, and cross-examination—to the degree that Plaintiff was acquitted. Accordingly, Plaintiff cannot create a plausible inference that his underlying trial was facially unfair or that he was deprived of due process resultant of said trial.

Moreover, any attempt Plaintiff makes to assert a substantive due process claim for malicious prosecution fails as a matter of law, as the Ninth Circuit has aptly determined "no substantive due process right exists under the Fourteenth Amendment to be free from prosecution without probable cause." Awabdy, 368 F.3d at 1069.

Other than the allegation for the deprivation of employment, the Complaint makes only vague and nebulous assertions that the Plaintiff's "rights or "constitutional rights" were violated by the City of Sparks and/or Officer Cleveland. Only once does the Complaint allege that Plaintiff's "constitutional rights under the . . . Fourth, Fifth, and Fourteenth Amendments were violated when a felony complaint was issued against him . . . ." (#34 p. 18.) However, as noted above, though not a model of clarity, the Complaint does plead enough facts that the Court may infer plausible misconduct at this stage in the litigation.

### B. Municipal Liability

Defendant also avers that the Complaint fails to state a claim for relief under Section 1983 because Plaintiff cannot assert municipal liability. In Monell v. New York City Dept. of Social Servs., the Supreme Court held that municipalities and other local government bodies are "persons" within the meaning of Section 1983, but that a municipality may not be held liable under Section 1983 solely because it employs a tortfeasor. 436 U.S. 658 (1978). To impose Section 1983 liability on a municipality, a plaintiff must demonstrate: (1) that the plaintiff possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy "amounts to deliberate indifference" to the plaintiff's constitutional right; and (4) that the policy is the "moving force behind the constitutional violation." Plumeau v. School Dist. No. 40 County of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997) (quoting Oviatt By and Through Waugh v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992)); see also Monell v. Dep't of Social Servs., 436 U.S. at 691 ("a municipality cannot be held liable under § 1983 on a respondeat superior theory").

### 1. Policy

The requirement that municipal liability must be based on a policy "ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." Monell v. Dept. of Soc. Serv. of City of N.Y., 436 U.S. at 694. A "governmental custom" may be considered a "policy" for liability purposes under Section 1983 "even though such a custom has not received formal approval through the body's official decisionmaking channels." Id. at 690–91. Thus, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law. Board of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397 (1997) (citing Monell v. Dept. of Soc. Serv. of City of N.Y., 436 U.S. at 690–691.

1  The Ninth Circuit has held that the definition of a "policy" under Monell and its progeny may
2  be a "deliberate choice to follow a course of action . . . made from among various alternatives by the
3  official or officials responsible for establishing final policy with respect to the subject matter in
4  question." Fogel v. Collins, 531 F.3d 824 (9th Cir. 2008). Here, the Complaint sufficiently alleges
5  that the City of Sparks had a "policy" of inadequate training and/or supervision and deliberate
6  indifference "to the rights of persons under investigation and prosecution" (Compl. ¶¶ 79–81.)

7  Additionally, the Supreme Court has held that under certain circumstances, a policy and
8  practice that violates the constitution and Section 1983 can be established by a single act or decision
9  of a municipal policy-maker. See Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986). In such
10 cases however, the plaintiff must demonstrate that the municipal employee that caused the
11 constitutional injury, had final policymaking authority for the particular subject matter involved. See
12 St. Louis v. Praprotnik, 485 U.S. 112, 123–25 (1988).[2]

13 Pitsnogle's complaint names only the City of Sparks as a Defendant, but the weight of his
14 allegations of misconduct are made against Detective Marlene Cleveland—who Defendant avers is a
15 nonsupervisory employee who does not qualify as a policymaker for either the Sparks Police
16 Department or the City of Sparks. Non-supervisory police officers must be shown to possess the
17 authority to establish policy before they can be considered to be "policymakers" of a municipality.
18 Davis v. City of Ellensburg, 869 F.2d 1230, 1234 (9th Cir. 1989). Whether an official has final
19 policymaking authority is a question of state law. Pembaur, 475 U.S. at 483. Here, Defendants
20 attach exhibits to their Motion to Dismiss, containing the job descriptions for the City of Sparks
21 "Chief of Police", and City of Sparks "Police Officer" in attempt to demonstrate that the City's
22 governing body, or city council, has "delegated no policy-making authority to police officers." (#35

---

[2]Similarly, the Supreme Court has held that "there are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under [Section] 1983, but "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton, Ohio v. Harris, 489 U.S. 378, 387 (1989).

9

at 12.) At this stage in the litigation however, the Court cannot examine said exhibits without converting Defendant's Motion into a Rule 56 motion for summary judgment.[3]

### C. Defamation

Defamation is historically a state cause of action, and the Supreme Court held in Paul v. Davis, 424 U.S. 693, 701 (1976), that to establish a defamation claim under §1983 more than damage to reputation by a state official must be alleged; the Plaintiff must also show a deprivation of constitutional dimension (such as a recognizable property or liberty interest) in conjunction with the allegation of injury to reputation. See, Cooper v. Dupnik, 924 F.2d 1520, 1532 (9th Cir. 1991).

The Ninth Circuit clarified the foregoing rules in its decision of Herb Hallman Chevrolet v Nash-Holmes, 169 F.3d 636, 645–646 (9th Cir. 1999), holding that:

> A § 1983 action requires that a claimant plead more than mere injury to reputation. The injury to reputation must be joined with an injury to a liberty or property interest protected by the due process clause of the Fourteenth Amendment. See Paul v. Davis, 424 U.S. 693, 703 (1976); see also Cooper v. Dupnik, 924 F.2d 1520, 1532 (9th Cir. 1991) (citation omitted). Hence, the label "defamation–plus."

Id., 169 F.3d at 645, n.3. The Court explained the additional requirement for §1983 cases as follows: There are two ways to state a cognizable §1983 claim for defamation plus: "(1) allege that the injury to reputation was inflicted in connection with a federally protected right; or (2) allege that the injury to reputation caused the denial of a federally protected right. See Cooper v. Dupnik, 924 F.2D 1520, 1532 (9th Cir. 1991).

Here, Pitsnogle's third claim for relief contains general allegations that he "suffered injury to his personal and professional reputation." (See Complaint, p. 21–22.) While rather general, his allegations incorporate all other paragraphs of his Complaint, including that he was deprived of a

---

[3] If matters outside of the pleadings are submitted in conjunction with a motion to dismiss, Rule 12(b) grants courts discretion to either accept and consider, or to disregard such materials. See Isquith v. Middle S. Utils., Inc., 847 F.2d 186, 193 n. 3 (5th Cir.1988). A court exercises this discretion by examining whether the submitted material, and the resulting conversion from the Rule 12(b)(6) to the Rule 56 procedure, may facilitate disposing of the action. Id. at 193 n. 3. If the court elects to convert the motion, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

liberty interest in his career as a police officer. Accordingly, through incorporation of the proceeding allegations, the Court finds that Plaintiff's third Claim for relief survives dismissal.

**IV. Motion for Final Judgment**

Plaintiff also seeks that the Court make an entry of final judgment pursuant to Fed. R. Civ. P. 54(b) as to the City of Reno and Washoe County "for the purposes of seeking an appeal of these two matters." (#36 at 1.)

The Ninth Circuit has given sound direction to district courts examining motions brought pursuant to Rule 54(b), stating:

> Judgments under Rule 54(b) must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties. The trial court should not direct entry of judgment under Rule 54(b) unless it has made specific findings setting forth the reasons for its order. Those findings should include a determination whether, upon any review of the judgment entered under the rule, the appellate court will be required to address legal or factual issues that are similar to those contained in the claims still pending before the trial court. A similarity of legal or factual issues will weigh heavily against entry of judgment under the rule, and in such cases a Rule 54(b) order will be proper only where necessary to avoid a harsh and unjust result, documented by further and specific findings.

Frank Briscoe Co., Inc. v. Morrison-Knudsen Co., Inc., 776 F.2d 1414, (9th Cir. 1985). Without citing a reason to necessitate said relief, Plaintiff states that he "should not have to wait until the conclusion of the trial on the merits or any further summary proceedings or settlements with the City of Sparks to resolve the claims against the City of Reno or County of Washoe." (#36 at 3.) Plaintiff's remaining claims arise from virtually the same allegations that were brought against the City of Reno and Washoe County in Plaintiff's original Complaint. Accordingly, there is a substantial likelihood that granting Plaintiff's Rule 54(b) Motion will not serve the interest of judicial economy and may advance unnecessary piecemeal litigation of the underlying issues.

**IV. Conclusion**

Accordingly, **IT IS HEREBY ORDERED** that Defendant City of Sparks ("Sparks") Motion to Dismiss (#35) is **DENIED**.

11

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Entry of Final Judgment (#36) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Leave to File Supplemental Reply (#48) is **GRANTED**.[4]

DATED this 29th day of September 2010.

_____
Kent J. Dawson
United States District Judge

---

[4] The Court has taken the supplemental authority cited in the Motion into its consideration of the Defendant's instant dispositive Motion.